W. D. ALDRIDGE, EMPLOYEE PLAINTIFF v. FOIL MOTOR COMPANY, EM-
PLOYER; ST. PAUL FIRE & MARINE INSURANCE COMPANY, CARRIER,
DEFENDANTS.

(Filed 12 June 1964.)

**1. Master and Servant § 53—**

The law of estoppel applies in compensation proceedings as in other
cases.

**2. Same; Master and Servant § 59— Insurer accepting premium for
coverage of employee held estopped to deny coverage.**

Evidence that the officers of a close corporation owned certain realty,
including the building in which the corporate business was carried on, that
they employed claimant to keep their several properties in repair, told the
local agent of insurer they wanted the employee covered by the corpora-
tion's compensation insurance policy and, in response to the agent's assur-
ance that this would accomplish this purpose, put the employee on the
corporation's payroll, so that his remuneration was included in computing
the insurance premium, *is held* to estop insurer from denying that an in-
jury to such employee while repairing property unconnected with the cor-
porate business was within the coverage of the policy.

APPEAL by plaintiff from *Armstrong, J.,* September 1963 Session of
ROWAN.

Plaintiff instituted this proceeding as a claim under the Workmen's
Compensation Act. The facts are undisputed. The defendant Foil
Motor Company is a close corporation owned by Linwood Foil and
his brother, James H. Foil. The former is president; the latter, the
manager and secretary-treasurer. The Motor Company has the sales
agency for Chrysler and Plymouth automobiles and is subject to the
provisions of the Workmen's Compensation Act. The Foil brothers
individually own a number of properties which include the building
occupied by the Motor Company and a warehouse leased to American
Bakery.

For thirty years prior to April 30, 1962, plaintiff Aldridge had
worked for Cone Mills as a card tender on the 3:00 to 11:00 p.m. shift.
For five years prior to that date he had also worked regularly in good
weather for the Foil brothers as a painter and carpenter to keep their
buildings in repair. Approximately two years before April 30, 1962, the
Foils decided that plaintiff should be covered by workmen's compen-
sation insurance while working for them. James H. Foil called in Mr.
R. C. Mills, the local agent of the St. Paul Fire & Marine Insurance
Company which carried the workmen's compensation insurance on Foil
Motor Company, and told him "exactly what Mr. Aldridge did, and
the whole story," *i.e.,* that he kept not only the garage property in re-

pair but worked on all the other Foil properties. Foil asked Mills if he could obtain workmen's compensation for plaintiff and Mills replied, "If you will put him on your payroll and pay him he would be covered." Foil then said, "You be sure of that thing, I want to know that he is covered."

Thereafter, plaintiff was placed on the payroll of the defendant Foil Motor Company which paid him at the rate of one dollar and a quarter an hour for his work on the properties jointly owned by the Foil brothers. If he worked for one brother only he was paid by that one and not by the Motor Company. Plaintiff worked on those properties four or five hours during the morning and eight and ten hours on Saturday, averaging twenty hours a week. During 1961 the Motor Company paid him approximately six hundred dollars. It deducted social security and withheld income tax from his wages. The premiums which Foil Motor Company paid to the defendant carrier were based upon its payroll which included plaintiff's wages.

On April 30, 1962, plaintiff reported at the Motor Company and was instructed by James H. Foil to go to the American Bakery Warehouse and repair an overhead door. While standing on a ladder and removing screws from that door, plaintiff fell and fractured his left hip. He was totally disabled for six months.

On these facts both the hearing commissioner and the full Commission concluded that plaintiff had sustained an injury by accident arising out of and in the course of his employment by Foil Motor Company and that the defendant Insurance Company, by accepting and retaining premiums based in part on plaintiff's wages, was estopped to deny its liability to plaintiff. Compensation of fifteen dollars a week was awarded under G.S. 97-29. Defendants appealed to the Superior Court. It sustained the carrier's contentions that the evidence did not support the Commission's findings and that the findings did not justify its conclusion that plaintiff had sustained a compensable injury. From a judgment reversing the Commission's award, plaintiff appealed.

*Robert M. Davis and George R. Uzzell for plaintiff.*
*Shuford & Yarbrough by Reginald S. Hamel for defendant.*

SHARP, J.   In *Burnett v. Paint Co.*, 216 N.C. 204, 4 S.E. 2d 507, 172 A.L.R. 378, it was held that if an employee of a business coming within the purview of the Workmen's Compensation Act is injured while performing work for the private and personal benefit of his employer, which work is unrelated in character or location to the business of the employer, he is not entitled to compensation under the Act. In that

case, Mrs. Lipe, the employer, was the sole proprietor of a paint and decoration shop at 82 Patton Avenue in Asheville where Burnett worked as janitor and delivery boy. His salary, paid entirely through the shop, also covered janitorial work at Mrs. Lipe's residence, and he was injured there while mowing her lawn. The Industrial Commission allowed compensation and this Court reversed. Mrs. Lipe's policy of employer's liability insurance specified that the only location of employer's work was 82 Patton Avenue; that her operation was a retail store risk; and that she conducted no other business operations at this or any other location. The insurance carrier had no knowledge that plaintiff's wages included work elsewhere. The rationale of the opinion was that the policy excluded liability for an injury received while plaintiff was working at Mrs. Lipe's residence. The Court pointed out: Plaintiff worked for Mrs. Lipe in a dual capacity. At the shop he was insured; at her home he was not. The Workmen's Compensation Act was designed to protect an employee against the hazards of his employer's business and not those of domestic service at his home. Moreover, Mrs. Lipe's insurance rates had been determined by the risk of injury to her employees at 82 Patton Avenue only.

The defendant carrier contends that when injured the plaintiff was not working for the defendant Motor Company but for its two officers and stockholders individually, and therefore the Burnett decision controls the instant case. With this contention we do not agree. We hold that this case is controlled by *Pearson v. Pearson, Inc.*, 222 N.C. 69, 21 S.E. 2d 879. In that case, P was the president and general manager of Newton Pearson, Inc., the insured employer, a business which sold both new and used cars. P not only supervised the business as president, but he frequently drove cars from distant points, collected accounts, and sold cars. His name appeared on the list of employees furnished the defendant carrier and his salary was included in the payroll which determined the amount of the compensation insurance premiums. When P was killed in an automobile accident while making collections for the corporation, the carrier contended that, as president and general manager, owning all the stock of the corporation except two shares, he could not be an employee. In sustaining the award of the Industrial Commission, this Court said:

> "However, we deem it unnecessary to decide the precise point chiefly debated, whether or not, under the facts of this case, the president and general manager of a small corporation, who also works as a salesman and collector of accounts, can be classified as an employee, since it appears that the defendants, by their

treatment of the decedent's relationship to the corporation as that of employee rather than executive, and the acceptance of the benefits of that status, have recognized his dual capacity and classification as employee to such an extent that they should not now be permitted to assert the contrary after loss has been sustained. The record shows that the defendant Insurance Company's agent gave instruction that decedent be so classified, and that his salary be included in the totals of the wages of the corporation's employees, and that this was done after consultation between the agent of the Insurance Company and the secretary-treasurer of the corporation. The premiums thereon were collected accordingly and received by the Insurance Company over a period of several years. . . . Thus the Insurance Company had knowledge that it was being paid for carrying the risk of accidental injury to decedent arising out of and in the course of his indicated employment in work other than that of an executive.

". . . While ordinarily the parties may not by agreement or conduct extend the provisions of the Workmen's Compensation Act, in this case the defendants' continued and definite recognition of the relationship of the president to the corporation as that of an employee, based upon knowledge of the class of work he performed, and the acceptance of the benefits of that classification, may well be regarded as having the effect of preventing them from changing their position after loss has been sustained."

"The law of estoppel applies in compensation proceedings as in all other cases." *Biddix v. Rex Mills*, 237 N.C. 660, 665, 75 S.E. 2d 777, 781; *Ammons v. Sneeden's Sons, Inc.*, 257 N.C. 785, 127 S.E. 2d 575. "That liability for workmen's compensation may be based on estoppel is well established." *Smith Coal Co. v. Feltner*, Ky., 260 S.W. 2d 398.

In *Brown v. Bouschor*, 207 Mich. 594, 175 N.W. 129, B was a subcontractor of C Lumber Company. B was also engaged in the lumber business for himself. When his Insurance Company withdrew its coverage, B requested C Company to carry his workmen's liability insurance with its own. As a result, C Company secured an endorsement on its policy with the Lumbermens Mutual Casualty Company which extended its coverage, terms, and conditions to B as an employer. Thereafter Brown, an employee of B, was killed while working for B on one of his independent projects. The insurance carrier denied its liability on this ground. Upon the hearing before the Industrial Accident Board, it appeared that neither C Company nor the insurance carrier knew that B had employees other than those who worked on subcontracts for C

Company. However, a substantial portion of B's employees were thus engaged, and B thought his insurance covered them all. Each month he had returned his entire payroll and paid the insurance premium on all his men. At the hearing the insurance carrier tendered back the premiums but the tender was, of course, refused. In holding the Insurance Company liable, the court said: B had "made no misrepresentations. He was not asked to disclose anything that he did not disclose. He desired liability insurance that would protect him under the Employers' Liability Law, as to all his employes. He supposed he was getting that kind of insurance, and he paid premiums upon that basis. We think it too late now for the insurance company to avail itself of the defense it is urging."

In this case the Industrial Commission found that plaintiff was an employee of Foil Motor Company and concluded that the injury was compensable. The evidence sustains the finding, *Pitman v. Carpenter,* 247 N.C. 63, 100 S.E. 2d 231, and the conclusion is legally correct. In accordance with an agreement between the corporation and its two stockholders who were also its officers, the corporation employed plaintiff to keep in repair all the properties which were jointly owned by the two officers and stockholders. Plaintiff was carried on its payroll and it deducted social security and income taxes from his wages. This was convincing evidence that plaintiff was actually an employee of the corporation. Certainly, at the time of his injury he was engaged in performing the work which the corporation had paid him to do for two years. Indeed, plaintiff had been put on its payroll for the very purpose of protecting him by workmen's compensation insurance and upon the advice of the defendant carrier's agent after a full disclosure to him of the specific nature and location of the plaintiff's work. Therefore, the carrier knew that it was insuring an employee of the Motor Company who would work as a painter and carpenter on all properties jointly owned by its officers individually. Plaintiff's wages were used in computing the amount of the premiums which the Motor Company paid defendant for its coverage, and defendant had accepted these premiums for over two years.

Under these circumstances the Insurance Company is in no position to contend that the Motor Company's contract or arrangement with plaintiff was *ultra vires*. It will not now be permitted to say either that the plaintiff was not the employee of Foil Motor Company or that the work which he was doing at the time of his injury was outside the risk it had assumed when insuring the employees of a garage and automobile sales agency. Had defendant not extended this coverage to plaintiff, the evidence indicates that other insurance would have been

procured to protect his income from the hazards of accident while repairing the Foil properties.

The judgment of the Superior Court is reversed and this case is re manded to it with directions that the award of the Industrial Commission be reinstated.

Reversed and remanded.