EMILY B. ALLRED, WIDOW OF DEWEY ALLRED, DECEASED EMPLOYEE, PLAINTIFF V. PIEDMONT WOODYARDS, INC. AND/OR SOUTHERN WOODYARDS COMPANY, EMPLOYERS AND AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 7620IC737

(Filed 16 March 1977)

1. Master and Servant § 49— workmen's compensation

While the evidence in this workmen's compensation proceeding would have supported the Industrial Commission's conclusion that defendant insurer was estopped to deny that a pulpwood cutter was acting as an employee of the two defendant woodyards at the time of his death by accident while cutting pulpwood, the Commission's findings of fact were insufficient to support such conclusion, and the proceeding must be remanded for further findings of fact and conclusions of law based on the present record.

2. Master and Servant § 71— workmen's compensation — average weekly wage

The Industrial Commission erred in determining a pulpwood cutter's average weekly wage based on all of the proceeds of sales of pulpwood to two woodyards where the evidence showed that the cutter was assisted in his work part of the time by his two sons and that they received part of the proceeds from the sales of pulpwood for their labor.

APPEAL by defendants from award of the North Carolina Industrial Commission entered 8 July 1976. Heard in the Court of Appeals 15 February 1977.

Plaintiff instituted this proceeding under the Workmen's Compensation Act to recover death benefits from her husband's alleged employers and their insurance carrier for an injury by accident to her husband resulting in his death.

Defendants stipulated that at the time of the alleged injury by accident, 14 November 1974, which injury resulted in the death of Dewey Allred (Dewey), defendant insurance company was the compensation carrier for defendants Piedmont Woodyards, Inc. (Piedmont), and Southern Woodyards Company (Southern).

A hearing was held before Deputy Commissioner Dandelake after which he made the following "Findings of Fact":

"1. On November 14, 1974, Dewey Allred was measuring and cutting pulpwood and while measuring a tree that

was being cut, the tree fell and hit the said Dewey Allred on top of his head; that he was carried to the hospital at Pinehurst, North Carolina, and was dead on arrival; that the deceased, Dewey Allred, was a white male, seventy-one years of age and had been a pulpwood cutter for twenty years or more.

"2. That the deceased employee's widow, Emily B. Allred, testified that she was with her husband when the agreement was made that the owner of Piedmont Wood-yards, Inc., take fifty cents per cord to enable his group to be covered under the Workmen's Compensation Act; that at a hearing at Carthage, North Carolina, on April 11, 1975, Mr. O. H. Lambert, Jr., owner of Southern Wood-yards Company, testified under oath that he deducted fifty cents per cord from his woodcutters; that Mr. O. H. Lam-bert, Jr., owner of Southern Woodyards Company, is now deceased and the wife of the deceased who is now operating Southern Woodyards Company denies that she collects fifty cents per cord for workmen's compensation and contends that what she deducts is for cost of production.

"3. That Piedmont Woodyards, Inc., operated by Mr. Harrington, also deducts fifty cents per cord on all wood purchased at the yard.

"4. It is found that fifty cents per cord was deducted from money due the deceased for the above two mentioned woodyards every time wood was delivered to these wood-yards and the stumpage was also deducted from money due deceased.

"5. That checks and vouchers were presented at the hearing, showing all sales and checks paid to Dewey Allred and said totals are amounts equal in dollars; that the pulpwood sold at one yard amounted to $3,898.84 and at the other yard it totaled $3,224.87.

"6. It is found by the undersigned that the deceased was an employee, jointly working for both of the above named defendant employers and the defendant insurance carrier is estopped to deny that the deceased and persons working for the deceased were acting as employees of both defendant employers and were covered by the workmen's compensation insurance paid for by the defendant em-ployers.

"7. That the deceased's average weekly wage was $137.00; that this average weekly wage is derived from the total money paid the deceased by both Southern Woodyards Company and Piedmont Woodyards, Inc., which amounts to $7,123.71, and this amount divided by fifty-two equals $137.00, which is enough to entitle the plaintiff to the maximum compensation.

"8. That the deceased was married to Emily Bruce at Chesterfield, South Carolina, in October, 1927, and they had eleven children; that all the children that are living have reached their majority; that one son lives at home and was ten percent dependent upon his father at the time of his death; that said son was a truck driver and was injured in a wreck and is now on disability, drawing $240.00 per month from Social Security benefits."

The hearing commissioner concluded as a matter of law that defendant carrier is estopped to deny that Dewey was acting as an employee of defendants Piedmont and Southern at the time of the injury by accident which resulted in death; that the parties were subject to and bound by the provisions of the Workmen's Compensation Act and plaintiff is entitled to death benefits under said act; that Dewey's average weekly wage was $137; that on 14 November 1974 Dewey sustained an injury by accident arising out of and in the course of his employment with defendants Piedmont and Southern; and that plaintiff is entitled to compensation at the rate of $80 per week for a period of 400 weeks, beginning 14 November 1974, on account of the death of Dewey.

From an award requiring defendant insurance carrier to pay plaintiff $80 per week for 400 weeks, together with $500 funeral expenses and medical expenses, defendants appealed to the full commission.

The full commission adopted as its own and affirmed "the decision of Deputy Commissioner Dandelake in its entirety." Defendants appealed to this court.

*Pittman, Staton & Betts, by Stanley W. West and William W. Staton, for plaintiff appellee.*

*Hedrick, Parham, Helms, Kellam & Feerick, by Richard T. Feerick and Edward L. Eatman, Jr., for defendant appellants.*

BRITT, Judge.

By their first assignment of error defendants contend that the commission erred in determining that Dewey was an employee working jointly for Piedmont and Southern, in determining that defendant insurance carrier was estopped to deny that Dewey was acting as an employee of both alleged employers, and that Dewey was covered by workmen's compensation insurance allegedly paid for by defendants Piedmont and Southern.

Defendants excepted to findings of fact 2 through 7 and to each of the conclusions of law. They argue that the challenged findings of fact are not supported by the evidence, that the findings do not support the conclusions of law and that the conclusions are contrary to law.

Evidence presented at the hearing is summarized in pertinent part as follows:

Plaintiff testified: On 14 November 1974 Dewey was killed while cutting trees to sell to defendants Piedmont and Southern as pulpwood. He had been in the business of cutting trees and selling them for pulpwood for some 20 years and for 10 years preceding his death had sold only to Piedmont and Southern. Dewey owned his own truck and equipment and was not supervised by defendants Piedmont or Southern. Dewey got the timber which he sold from landowners who asked them to clear their property, would cut the timber into lengths specified by Piedmont and Southern and would sell it to them. His sons, Larry and David, helped him from time to time. When Piedmont and Southern would pay Dewey for a load of pulpwood they would deduct 50 cents per cord for workmen's compensation coverage in case anything happened to him. They would also make a deduction for the people who owned the land from which the wood was cut.

David Allred testified: He worked with Dewey, his father, "off and on" for about 1½ years prior to Dewey's death. In 1974 Mr. Harrington, Piedmont's overseer at Putnam, told him that from the proceeds of pulpwood sold by Dewey, they deducted 50 cents per cord for compensation and also deducted "stumpage" for the landowner.

Mrs. Thelma Williams Lambert testified: She is the widow of O. H. Lambert who owned Southern during and prior to

1974 and who died on 30 May 1975. She assisted her husband prior to his death and continued to operate the business following his death. The only amounts deducted from the sales of pulpwood made by Dewey were for stumpage and they did not make deductions for workmen's compensation on anybody.

Dorothy Garner testified: She is Dewey's daughter and after her father's death she talked with O. H. Lambert and heard him testify in another proceeding. On both occasions she heard him say that Dewey was "covered," that deductions (for compensation) were made from every cord of pulpwood purchased.

By consent the testimony of Clarence Joyner and O. H. Lambert, Jr., given at a previous hearing in another proceeding, was admitted. Their testimony is summarized as follows:

Clarence Joyner testified: He was the general manager of Piedmont. His company paid workmen's compensation premiums to defendant insurance company on every cord of wood purchased from the Allreds during 1974. His firm would make deductions for stumpage but the premiums for workmen's compensation were paid by the company as a part of its operating expense.

O. H. Lambert, Jr., testified: He worked with Southern for 20 years and was manager in 1974. Southern paid defendant insurance company workmen's compensation premiums on each cord of wood purchased from the Allreds. He negotiated his policy with defendant insurance company. At the request of defendant insurance company they agreed on a "per cord" premium basis as opposed to a salary basis. It was his understanding that the policy would cover "all of my employees plus the employees of any subcontractors who did not have their own workmen's compensation." By the term "subcontractor" he had in mind an individual that owned his own equipment, hired his own employees and was self-employed.

By consent the insurance policies issued by defendant insurance company to Piedmont and Southern covering the period in question were introduced. The policy issued to Southern provided coverage in North Carolina for "LOGGING OR LUMBERING — PULPWOOD EXCLUSIVELY — ALL OPERATIONS — INCLUDING DRIVERS" and on this item stated an estimated annual premium of $21,778. The policy issued to Piedmont provided

coverage for "LOGGING OR LUMBERING — PULPWOOD EXCLU-
SIVELY INCLUDING TRANSPORTATION OF LOGS TO MILL . . . "
and on this item stated an estimated annual premium of $36,205.

Defendants argue first that the evidence showed conclu-
sively that Dewey was self-employed; that he owned his own
truck and equipment, was not supervised in the cutting of tim-
ber in any way by Piedmont or Southern, that he worked when-
ever he chose and could hire or fire whomever he chose; that
he met all of the criteria of an independent contractor set out in
*Hayes v. Elon College,* 224 N.C. 11, 29 S.E. 2d 137 (1944).

Inasmuch as the commission's decision was based primarily
on the conclusion that defendant insurance company is estopped
to deny that Dewey was an employee of Piedmont and Southern,
we do not reach the question whether Dewey was an employee,
an independent contractor or a self-employed operator. We
proceed to determine whether the principle of estoppel is appli-
cable.

In *Aldridge v. Motor Co.,* 262 N.C. 248, 251, 136 S.E. 2d
591, 593-594 (1964), in an opinion by Justice (now Chief Jus-
tice) Sharp, we find: " 'The law of estoppel applies in compen-
sation proceedings as in all other cases.' *Biddix v. Rex Mills,*
237 N.C. 660, 665, 75 S.E. 2d 777, 781; *Ammons v. Sneeden's
Sons, Inc.,* 257 N.C. 785, 127 S.E. 2d 575. 'That liability for
workmen's compensation may be based on estoppel is well estab-
lished.' *Smith Coal Co. v. Feltner, Ky.,* 260 S.W. 2d 398."

*Pearson v. Pearson, Inc.,* 222 N.C. 69, 21 S.E. 2d 879
(1942), also provides guidance in this case. In *Pearson,* a work-
men's compensation proceeding, the decedent was president,
general manager and major shareholder of a small corporation
engaged in selling and servicing automobiles. The salary of
decedent was included in computing the total payroll of the cor-
poration and for purpose of determining the amount of compen-
sation of insurance premiums due the defendant carrier. The
carrier accepted the premiums based on the payroll which in-
cluded the salary of decedent and this had been the practice
for several years. Decedent was killed in an automobile accident
while on a mission collecting accounts. In an opinion by Justice
(later Chief Justice) Devin, the court held:

" . . . While ordinarily the parties may not by agreement
or conduct extend the provisions of the Workmen's Compen-

sation Act, in this case the defendants' continued and definite recognition of the relationship of the president to the corporation as that of an employee, based upon knowledge of the class of work he performed, and the acceptance of the benefits of that classification, may well be regarded as having the effect of preventing them from changing their position after loss has been sustained." *Supra* at 71-72, 21 S.E. 2d at 880-881.

[1]   While the facts in the case *sub judice* differ from those in *Aldridge* and *Pearson,* we think the evidence in this case would support findings of fact that would warrant application of the principle of estoppel applied in those cases. However, the commission failed to find sufficient facts to support its conclusions of law applying the principle.

For example, in finding of fact number 2 it is stated that plaintiff and Mr. Lambert gave certain testimony, but the commission made no finding based on that testimony. We also point out that we are unable to find in the record where Mr. Lambert testified that he deducted 50 cents per cord from his woodcutters.

As a further example, while there was evidence that Piedmont and Southern paid defendant insurance company premiums equivalent to 50 cents per cord on all pulpwood purchased from the Allreds, and with respect to Southern this was done at the request of defendant insurance company, there were no findings based on that evidence.

For failure of the commission to make sufficient findings of fact to support its conclusions of law and award, the award must be vacated and the cause will be remanded to the commission for further findings of fact, conclusions of law and determination based on the record now before it.

[2]   Although we are ordering this cause remanded pursuant to defendant's first assignment of error, we deem it necessary to consider and pass upon their second assignment. By this assignment, defendants contend the commission erred in determining that Dewey's average weekly wage was $137 and, based thereon, awarding plaintiff compensation at the rate of $80 per week.

G.S. 97-2(5), as applicable to this case, defines "average weekly wages" as "the earnings of the injured employee in the

employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury . . . . "

G.S. 97-38 provides, in pertinent part, that if death results proximately from the accident and within two years thereafter, the employer shall pay, or cause to be paid, weekly payments of compensation equal to 66⅔ percent of the average weekly wages of the deceased employee at the time of the accident, but not more than $80, nor less than $20, per week, etc.

In its finding of fact number 5, the commission found that checks and vouchers were presented at the hearing showing all sales and checks paid to Dewey, and that the pulpwood sold at one yard amounted to $3,898.84 and at the other yard $3,224.87 (a total of $7,123.71). In its finding number 7, it found that Dewey's average weekly wage was $137 and made that determination by dividing $7,123.71 by 52. We hold that these findings are not supported by the evidence.

The evidence showed that Dewey was assisted in his work part of the time by his son Larry and at other times by his son David and that they received part of the proceeds from the sale of the pulpwood for their labor. While we are not persuaded by defendants' argument that the evidence establishes that the total proceeds should be divided three ways, we do think the evidence establishes that the sons received some of the proceeds. For example, the copies of Piedmont vouchers, introduced by consent, indicated that approximately $115 in checks were made payable to Larry and approximately $675 were made payable to David.

We hasten to say that in view of all the evidence presented, the commission was not compelled to find that Dewey had no interest in the proceeds of the checks made payable to his sons; but we do say that a finding that Dewey was entitled to *all* the proceeds is not supported by the evidence. We think the commission can make proper findings from the evidence in the record as to Dewey's average weekly wage.

For the reasons stated, the opinion and award appealed from are vacated and this cause is remanded to the Industrial

Commission for proper findings of fact, conclusions of law and determination based on the record now before it.

Award vacated and cause remanded.

Judges CLARK and ARNOLD concur.