WILLIE GODLEY, Employee-Plaintiff v. COUNTY OF PITT and/or TOWN OF WINTERVILLE, Employer; U.S. FIRE INSURANCE and/or GREAT AMERICAN INSURANCE, Carrier-Defendants

No. 87PA82

(Filed 13 July 1982)

Estoppel § 4.6; Master and Servant § 51— workers' compensation—CETA employee—estoppel to deny coverage

If a CETA employee would not otherwise be protected by workers' compensation insurance for a work-related injury, a State governmental unit which hired the CETA employee and paid workers' compensation premiums for the employee, and the insurance carrier which accepted payment of those premiums, will be estopped from denying coverage of the CETA employee's work-related accident.

Godley v. County of Pitt

APPEAL by defendants Town of Winterville (employer) and Great American Insurance Company (carrier) pursuant to G.S. 7A-31 for discretionary review of the decision of the Court of Appeals (*Judge Arnold,* with *Judges Vaughn* and *Webb* concurring) reported at 54 N.C. App. 324, 283 S.E. 2d 430 (1981). The Court of Appeals reversed the opinion and award entered by the North Carolina Industrial Commission on 14 November 1980, ruling that the County of Pitt and U.S. Fire Insurance were liable for the payment of compensation benefits to the injured employee.

The essential facts of this controversy are adequately summarized in the Court of Appeals' opinion, which we quote:

This case arises under the Workers' Compensation Act, G.S. 97-1 *et seq.,* from injuries suffered by the plaintiff in an admittedly compensable, work-related accident on 10 January 1979. At issue before the Commission was a dispute as to which of two alleged employers of the plaintiff was in fact his employer and therefore obligated to compensate the plaintiff for his injuries.

The defendants agreed, pending the outcome of this action, that appellant insurer, carrier for Pitt County, would compensate the plaintiff fully and that appellee insurer, carrier for the Town of Winterville, would reimburse appellant if plaintiff were found to have been the town's employee at the time of the accident.

The facts are not disputed by the parties.

Defendant Pitt County (County) hired plaintiff pursuant to a contract with the Community Employment Training (CETA) program of the federal government and assigned him to work for defendant Town of Winterville (Town). Plaintiff's work was supervised by Town employees and his duties and hours were determined by the Town. Time sheets were kept by the Town on which plaintiff's hours were recorded and these were turned over to the County. County paid the plaintiff from CETA funds and maintained his payroll records. Town kept no records on the plaintiff other than his time sheets and could not fire the plaintiff without the County's approval.

Pursuant to a condition imposed by the federal government for receipt of CETA funds, County paid workers' compensation insurance premiums covering plaintiff and other CETA employees. County was reimbursed by CETA for these expenditures. Town did not pay premiums to its insurance carrier with respect to plaintiff.

The hearing officer found that the County and its insurance carrier were estopped to deny that the County was plaintiff's employer since the County had paid insurance premiums based on inclusion of the plaintiff under its workers' compensation policy and its insurer had accepted these premiums. In . . . reliance upon this finding, the Commission held as a matter of law that the County was plaintiff's employer and was obligated to compensate plaintiff for his injuries. On appeal, the Full Commission affirmed.

54 N.C. App. at 324-25, 283 S.E. 2d at 431.

The Court of Appeals subsequently reversed the decision of the Industrial Commission and held that: (1) the Commission had erroneously concluded that the County and its insurance carrier were estopped from denying liability on the theory that the requisite employment relationship between the injured employee and the County did not exist, and (2) the Commission's findings of fact were insufficient to support its conclusion of law that this necessary relationship with the County existed on the date of the employee's accident. The Town and its insurance carrier appeal to our Court for reinstatement of the Commission's original opinion and award in this matter.

*Teague, Campbell, Conely & Dennis, by C. Woodrow Teague and George W. Dennis, III, for defendant-appellants.*

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Daniel F. McLawhorn, amicus curiae for defendant-appellants.*

*Young, Moore, Henderson & Alvis, by B. T. Henderson, II and William F. Lipscomb, for defendant-appellees.*

COPELAND, Justice.

Appellate review of opinions and awards of the Industrial Commission is strictly limited to the discovery and correction of

*legal* errors. G.S. 97-86; *Barham v. Food World,* 300 N.C. 329, 266 S.E. 2d 676 (1980); *Byers v. Highway Comm.,* 275 N.C. 229, 166 S.E. 2d 649 (1969). The dispositive issue here is whether the Commission erred as a matter of law in concluding that Pitt County and its insurance carrier, U.S. Fire Insurance, were estopped from denying coverage of the employee's work-related accident under the particular facts of this case. We affirm the Commission's conclusion in this regard and reverse the contrary decision of the Court of Appeals.

In its broadest and simplest sense, the doctrine of estoppel is a means of preventing a party from asserting a legal claim or defense which is contrary to or inconsistent with his prior actions or conduct. *See generally* Dobbs, Handbook on the Law of Remedies § 2.3, at 41-44 (1973). The underlying theme of estoppel is that it is unfair and unjust to permit one to pursue an advantage or right which has not been promoted or enforced prior to the institution of some lawsuit. *See McNeely v. Walters,* 211 N.C. 112, 189 S.E. 114 (1937). In particular, "[t]he rule is grounded in the premise that it offends every principle of equity and morality to permit a party to enjoy the benefits of a transaction and at the same time deny its terms or qualifications." *Thompson v. Soles,* 299 N.C. 484, 487, 263 S.E. 2d 599, 602 (1980).

An estoppel can arise in any legal setting, and our appellate courts have prudently and repeatedly applied the doctrine in workers' compensation cases to thwart an insurance carrier's subsequent attempt to avoid coverage of a work-related injury, howbeit upon a legitimate ground, when the carrier has previously and routinely accepted the payment of insurance premiums pertaining to the injured individual. *Aldridge v. Motor Co.,* 262 N.C. 248, 136 S.E. 2d 591 (1964); *Pearson v. Pearson, Inc.,* 222 N.C. 69, 21 S.E. 2d 879 (1942); *Garrett v. Garrett & Garrett Farms,* 39 N.C. App. 210, 249 S.E. 2d 808 (1978), *discretionary review denied,* 296 N.C. 736, 254 S.E. 2d 178 (1979); *see Moore v. Electric Co.,* 264 N.C. 667, 142 S.E. 2d 659 (1965); *Greene v. Spivey,* 236 N.C. 435, 73 S.E. 2d 488 (1952); *Britt v. Construction Co.,* 35 N.C. App. 23, 240 S.E. 2d 479 (1978); *Allred v. Woodyards, Inc.,* 32 N.C. App. 516, 232 S.E. 2d 879 (1977). This rule is plainly consistent with the overall rationale of the remedial doctrine of estoppel, and it is so well established in our jurisdiction that it requires no explanation or elaboration here. Yet the Court of Appeals de-

clined to hold in the instant case that Pitt County and U.S. Fire Insurance, the undisputed payor and payee of the compensation premiums for the injured employee, were estopped to deny coverage due to its belief that estoppel in workers' compensation cases is of the classic form, that is, "equitable" estoppel, which would require a showing of detrimental reliance by the Town of Winterville and Great American Insurance before the doctrine could operate in their favor. 54 N.C. App. at 326, 283 S.E. 2d at 431-32; *see generally Bourne v. Lay & Co.*, 264 N.C. 33, 140 S.E. 2d 769 (1965); 5 Strong's N.C. Index 3d, Estoppel §§ 4.5-4.6 (1977). We are not so persuaded in this case.

None of the workers' compensation cases, which have previously applied estoppel against an insurance carrier based upon its receipt and acceptance of the required premiums (*supra*), have expressly denominated the estoppel so used as "equitable" or mentioned the necessity for detrimental reliance by, or the accrual of some harm to, the party who seeks to benefit from the doctrine's application. It seems certain, as a matter of common sense, that such detriment or prejudice would perforce exist in all of these cases, in any event, since some other provision for coverage surely would have been made if the party to be estopped had not paid or accepted the premiums. *See Aldridge v. Motor Co., supra*, 262 N.C. at 252-53, 136 S.E. 2d at 594. Perhaps then, the prior pertinent decisions have omitted an express reference to detrimental reliance in such circumstances because the nature of the situation dictates that it be conclusively presumed. *See* 1C Larson, Workers' Compensation Law § 46.40, at 8-223 to 227 (1980 and Supp. 1981). *But see* 7B Appleman, Insurance Law and Practice § 4659 (Berdal ed. 1979).

We need not specifically decide this issue of estoppel theory with respect to *all* workers' compensation cases today, however. It suffices to say that we believe that the unique situation involving compensation coverage of federally paid CETA employees in this State would be best governed in every instance by a straightforward rule of "quasi" estoppel, which does not require detrimental reliance *per se* by anyone, but is directly grounded instead upon a party's acquiescence or acceptance of payment or benefits, by virtue of which that party is thereafter prevented from maintaining a position inconsistent with those acts. 31 C.J.S. Estoppel § 107 (1964); 28 Am. Jur. 2d Estoppel and Waiver § 59

(1966); *see Corbett v. Corbett,* 249 N.C. 585, 107 S.E. 2d 105 (1959); *Cook v. Sink,* 190 N.C. 620, 130 S.E. 714 (1925); *Redevelopment Comm. v. Hannaford,* 29 N.C. App. 1, 222 S.E. 2d 752 (1976). In so holding, we endorse the sound reasoning expounded by the Attorney General in his *amicus* brief at pages 6-8:

> [Quasi estoppel is] the only acceptable rule which may be fashioned to accommodate many CETA workers and other workers similarly situated. In several CETA programs workers are assigned to job sites not controlled by the agency which holds the CETA subgrant. That agency must select the participants and provide for the benefits assured participants by the subgrant and Federal law. See, 29 USC § 823(d)(6) and 20 CFR § 676.27(a). Since the subgrantee does not supervise the participants, the logical result of the Court of Appeals decision will require separate workmen's compensation coverage at each site supervised by an entity other than the subgrantee. While compliance with that result is not impossible, the administrative complications of the subgrantee and insurance carriers will be staggering. Under the rule proposed herein, a single carrier would provide the coverage regardless of the site or supervisor. Premiums would continue to be determined from the payroll records rather than some new system yet to be devised.

> It would also avoid the second complication which is implicit in the principles of equity. Should the Court of Appeals' opinion be upheld, the carrier will have collected premiums for workers it never covered while the liability for injuries will pass to carriers which did not collect the premiums or agree to cover the participants. Thus, the carrier will be enriched unjustly as a result of the repudiation of its contracted burdens. The subgrantee will ultimately be the party injured. All CETA expenses must provide the services for which the monies were paid. Since the premiums will not have provided the coverage contracted, the subgrantee will have failed to fulfill its contractual obligations to provide workmen's compensation insurance from the appropriate service and to expend CETA funds for the purpose the funds were provided. Accordingly, it will be necessary for the Department of Natural Resources and Community Development to recoup all such premiums from the subgrantee.

The rule proposed allows the subgrantees to continue to meet their obligations and will find they have done so in the past. It will work no inequity against carriers such as United States Fire Insurance and will prevent inequities resulting to subgrantees such as the County of Pitt and carriers such as Great American Insurance. It will also allow the CETA programs to operate as they do presently. Otherwise, it may be necessary to curtail certain services now available to entities which have no workmen's compensation insurance. CETA participants may now be assigned to volunteer groups and other similar entities which have no coverage. The carrier providing coverage has the ability to set the premiums according to the work sites regardless of location or site supervision.

In sum, we uphold the Industrial Commision's conclusion that the facts of this case warranted the application of an estoppel against Pitt County and U.S. Fire Insurance, who respectively paid and received the compensation premiums for the employee, in the favor of the Town of Winterville and Great American Insurance, who respectively did not pay or receive any such premiums and were not aware of any need for doing so. We emphasize that out decision is largely limited to these peculiar facts about the coverage of CETA employees under the provisions of our workers' compensation law. We express no opinion regarding *who* (the Town or the County) this CETA employee was actually working for on the date of his accident. We only say here that, if a CETA employee would not otherwise be protected by workers' compensation insurance for a work-related injury, the state governmental unit which hired him and paid the required premiums shall be estopped to deny liability therefor, as will its insurance carrier which accepted payment of those premiums. This is a rule upon which all parties concerned in the administration of the CETA program can steadfastly rely and best arrange their affairs.

The decision of the Court of Appeals is, therefore, reversed, and the opinion and award of the Industrial Commission is reinstated for the reasons given.

Reversed.