***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Defendant-employer, L S Holding Company T/A Woodland Farms, operates several business entities, including Woodland Farms.
2. Defendant-employer operates a cotton gin known as Liberty Gin on a seasonal basis during the year.
3. On December 21, 1998, plaintiff was employed by defendant-employer and was performing the duties of a press operator at its Liberty Gin facility.
4. On December 21, 1998, defendant-employer was subject to the North Carolina Workers' Compensation Act.
5. On December 21, 1998, defendant-carrier provided workers' compensation insurance coverage to L S Holding and Woodland Farms.
6. On December 21, 1998, plaintiff received a crush avulsion injury of the right hand with multiple amputations while cleaning his cotton press machine at the Liberty Gin facility.
7. On December 21, 1998, plaintiff was acting within the scope and course of his employment.
8. The injuries sustained by plaintiff on December 21, 1998 occurred as the result of an accident which arose out of his employment.
9. As a result of his injuries plaintiff has sustained a 100% permanent partial impairment of his right hand.
10. Plaintiff is 38 years old, born September 15, 1962 and has a 10th grade education.
11. As a result of his injuries, plaintiff has been unable to perform his job as a press operator since December 21, 1998.
12. In October 2000, plaintiff was fitted with a prosthetic device.
13. At the time of injury by accident on December 21, 1998, plaintiff's average weekly wage was $232.88.
14. Plaintiff's weekly compensation rate is $155.26.
15. Without prejudice to defendant-employer's right to assert entitlement to insurance coverage from the defendant-carrier, defendant-employer paid plaintiff his full salary from the date of injury until sometime in October 1999 and since that time, defendant-employer has paid plaintiff the equivalent of temporary total disability benefits.
16. The following medical and rehabilitation records were received into evidence:
a. Southeastern Regional Medical Center;
b. Duke University Medical Center;
c. Dr. Richard Moore; and
Jane Bayer, Duke Occupational Services.
17. The deposition of Paul Simpson is a part of the evidentiary record.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff worked for defendant-employer as a press operator at its ginning facility, which is called Liberty Gin. Plaintiff begin work for defendant-employer in November 1998 and continued working there until December 21, 1998, when he sustained a crush avulsion injury to his right hand while cleaning the cotton press machine. Plaintiff's compensable injury resulted in multiple amputations and a 100% permanent partial impairment of his right hand.
2. Plaintiff was an employee of Woodland Farms and had worked at their Liberty Gin facility since November 6, 1998 according to the "State of North Carolina New Hire Reporting" form. Woodland Farms is a division of LS Holding Company and they both share the same tax identification number. Plaintiff received six payroll checks drawn on the Woodland Farms payroll account, each of which he endorsed and cashed.
3. Woodland Farms and Liberty Gin operated out of two bank accounts. One was the "Woodland Farms payroll account" and the other was "Woodland Farms, Inc. DBA Liberty Gin." Profits from Liberty Gin were deposited into both of the Woodland Farm checking accounts. Murphy Evans, president of LS Holding Company, testified that Liberty Gin had always been a part of Woodland Farms since its purchase around 1986. He also stated that Woodland Farms was merged into LS Holding Company prior to 1998.
4. Woodland Farm's farming operation included the growing of various crops, including cotton. The cotton was processed at Liberty Gin as a part of defendant-employer's overall operation. Woodland Farms and Liberty Gin are not separate entities. Liberty Gin is part of the Woodland Farms operation which was merged with LS Holding Company prior to 1998.
5. Defendant-employer, LS Holding Company, obtained workers' compensation insurance from defendant-carrier in 1997. Ben Singleton, the agent who placed the coverage for defendant-employer, had placed insurance coverage for defendant-employer in the past and has been licensed by the Department of Insurance since 1992. The agent who places the coverage and defendant-carrier examine the classification codes which are unique to different jobs at defendant-employer, the claim history and the loss experiences associated with those jobs to assess risk prior to placing coverage. Mr. Singleton testified that he did not know all the classification codes and would not expect defendant-employer to know all of them. Mr. Singleton was aware of how jobs were grouped together by defendant-employer and was familiar with defendant-employer's operations from past dealings and never informed defendant-employer to group jobs in any other manner. Defendant-employer provided information that Mr. Singleton requested and relied on him to instruct defendant-employer how to place jobs within the classification codes. Defendant-employer used the codes as instructed by Mr. Singleton.
6. Paul Simpson is an agent with Stan Taylor Insurance and testified via deposition concerning the LS Holding file that Mr. Singleton had developed when he was employed with the Stan Taylor Insurance Agency. According to Mr. Simpson, the Workers Compensation Insurance Experience Rating is completed by the Rate Bureau and copies are sent to the insurance agency and the insurance company. This document is maintained in the file and used to show class codes for past coverage, to help the agency estimate losses and to provide information about the policy of a particular insured. The Experience Rating for defendant-employer contained the class code for a cotton gin and was a part of the LS Holding file used by the agent in placing the coverage for defendant-employer.
7. Workers' compensation premiums are based upon the salaries of the employees to be covered in addition to the code classifications that consider the hazards associated with particular jobs. Plaintiff's salary as well as the secretaries' salaries at Liberty Gin were included in defendant-carrier's calculation of defendant-employer's workers' compensation premium for the coverage period of July 6, 1998 to July 6, 1999. Plaintiff's salary was included in the hay, grain and feed dealer category for LS Holding Company because of the seasonal nature of his job. Ben Singleton, the agent who placed the coverage for defendant-employer, was aware of this and did not instruct defendant-employer, who relied on the agent's knowledge of the class codes and application process, to list plaintiff's salary under a different class code.
8. Defendant-carrier placed the coverage and received payment for the coverage from the "Woodland Farms, Inc. DBA Liberty Gin" checking account. Plaintiff's salary was included in the application and was considered in establishing the premium that defendant-employer would pay to defendant-carrier. At the time of plaintiff's injury by accident, defendant-carrier was providing coverage for defendant-employer, including plaintiff though plaintiff's classification was at a lower rate than if he had been classified as a cotton gin worker.
9. Mr. Singleton testified he was aware of the cotton gin, but stated he was not sure when he learned of it. He stated that he felt like he learned of the cotton gin subsequent to the issuance of the policy, but prior to plaintiff's accident. Defendant-carrier had notice of the cotton gin from the Experience Rating provided by the Rate Bureau and from Ben Singleton prior to the date of the audit of February 24, 1999 and prior to the denial of coverage set out in the June 25, 1999 letter from Tanya Shapiro with Key Benefit Services.
10. The workers' compensation policy number WC2365-1998 insured LS holding Company and Woodland Farms. The insured made premium payments to defendant-carrier, who accepted and deposited said payments. The policy was in full force and effect at the time of plaintiff's injury and provides coverage for plaintiff's injury.
11. Defendant-carrier's defense of this claim was not based upon stubborn, unfounded litigiousness.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment on December 21, 1998. N.C.G.S. § 97-2(6).
2. Defendant-carrier accepted premium payments from defendant-employer based on the application submitted by defendant-carrier's agent who had handled insurance needs for defendant-employer for years and was familiar with their insurance needs as evidenced by the file developed and maintained by the agent. Defendant-carrier is estopped from denying coverage for plaintiff's injury. It is well-established law that principles of estoppel are applicable to workers' compensation cases.Aldridge v. Motor Co., 262 N.C. 248, 136 S.E.2d 591 (1964).
3. As a result of plaintiff's compensable injury on December 21, 1998, plaintiff is entitled to temporary total disability compensation at the rate of $155.26 per week beginning December 21, 1998 and continuing until he returns to work at the same or greater wages or further order of the Commission. Defendant-employer is entitled to reimbursement from defendant-carrier for compensation paid to plaintiff for his compensable injury. N.C.G.S. § 97-29.
4. Subject to the limitations of N.C.G.S. § 97-25.1, plaintiff is entitled to have defendant-carrier pay for all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury by accident on December 21, 1998 which may reasonably be required to effect a cure, provide relief or lessen plaintiff's period of disability. With regard to medical expenses defendant-employer paid on behalf of plaintiff due to plaintiff's compensable injury, defendant-employer is entitled to reimbursement from defendant-carrier. N.C.G.S. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee, defendant-carrier shall pay plaintiff temporary total compensation at a rate of $155.26 per week for the period beginning as of defendant-employer's last date of payment for plaintiff's disability which began December 22, 1998 and continuing until plaintiff returns to work at the same or greater wages or until further order of the Commission. Any compensation that has accrued shall be paid in a lump sum. Furthermore, subject to an attorney's fee, defendant-carrier shall reimburse defendant-employer at the weekly compensation rate of $155.26 for compensation defendant-employer paid to plaintiff. The medical bills which defendant-employer paid shall be submitted by the health care providers to defendant-carrier which shall pay the health care providers according to the I.C. Medical Fee Schedule and the health care providers shall reimburse defendant-employer the amount paid by defendant-employer.
2. Subject to the limitations of N.C.G.S. § 97-25.1, defendant-carrier shall pay all reasonably necessary medical expenses incurred as a result of the compensable injury for so long as such treatments tend to effect a cure, give relief or lessen the period of disability.
3. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff is approved for plaintiff's counsel. One fourth of any lump sum due plaintiff shall be paid directly to plaintiff's attorney, as well as every fourth check thereafter.
4. Defendant-carrier shall pay the costs of this action.
This the ___ day of January 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER