***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed on or about January 5, 2001.
3. Zurich Insurance Company was the carrier for defendant-employer, but there is an issue regarding coverage of the sole proprietor himself.
4. Plaintiff's average weekly wage will be determined by a properly completed Form 22 and/or appropriate payroll records.
5. All medical records can be admitted into evidence subject to the right of either party to depose the medical providers.
6. At the hearing before the Deputy Commissioner the parties stipulated into evidence plaintiff's medical records from Comadoll-Watts Orthopaedic Clinic, Rowan Regional Medical Center, and Salisbury Orthopaedic Association.
7. The following exhibits were received into evidence at the hearing before the Deputy Commissioner:
a. Plaintiff's Exhibit 1 — Injury Report
b. Plaintiff's Exhibit 2 — Acknowledgement
c. Plaintiff's Exhibit 3 — Assignment of Case Worker
 d. Plaintiff's Exhibit 4 — Application for Workers' Compensation
 e. Plaintiff's Exhibit 5 — Workers' Compensation Policy from Zurich
f. Plaintiff's Exhibit 6 — Audit Report
g. Plaintiff's Exhibit 7 — Refund
8. The issues before the Commission are whether plaintiff was covered under the company policy plaintiff had with Zurich Insurance and, if so, to what compensation or other benefits is he entitled.
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
On the date of the hearing before the Deputy Commissioner, plaintiff was fifty-eight years old, a high school graduate and a licensed electrician.
Plaintiff operated his own electrical contracting company as a sole proprietor for 22-23 years. His company performed commercial, industrial and residential electrical installation and repairs. Plaintiff had some ongoing accounts with industries in the area as well as projects awarded through the bidding process. His duties included reviewing blueprints, submitting bids for jobs and supervising the operation of the business.
Up until April 2000, Harleysville Insurance Company (Harleysville) provided workers' compensation insurance coverage for plaintiff's company through a policy secured with the Kepley-Crowell Insurance Agency. Jay Kepley was plaintiff's agent during the previous 20 years.
The Harleysville policy Mr. Kepley obtained for plaintiff's company provided coverage for plaintiff as well as for plaintiff's employees. In April 2000 when all of the business policies needed renewal, Mr. Kepley contacted plaintiff, as was customary, to have him come to the office to discuss his insurance needs for the next year. At this meeting, plaintiff informed Mr. Kepley that he would be losing several employees assigned to work at a textile mill which was in the process of closing. Plaintiff wanted the estimated payroll to be reduced to reflect the expected layoffs because he did not want to overpay insurance premiums.
Mr. Kepley, who was an authorized agent for both Harleysville and Zurich Insurance Company (hereafter "defendant"), advised plaintiff that he could get a better rate with Zurich and Mr. Kepley encouraged plaintiff to switch companies.
Mr. Kepley testified that he also advised plaintiff that most sole proprietors did not want coverage for themselves and that additional premium savings could be achieved if plaintiff dropped that coverage. He also testified that plaintiff stated that he would like to drop that coverage.
For reasons described below, Mr. Kepley's testimony is not accepted as credible by the Full Commission. In fact, plaintiff instructed Mr. Kepley that he wanted equivalent coverage to what he had with Harleysville, which included coverage for himself. It was plaintiff's understanding that he was required to maintain coverage on himself in order to enter into contracts with employers.
When the application was completed by Mr. Kepley's office, coverage for the sole proprietor was specifically excluded. Mr. Kepley did not discuss the specifics of the application form with plaintiff and did not provide a copy of the application to plaintiff. Mr. Kepley signed plaintiff's name on the application and submitted it directly to defendant.
When the policy was issued and sent to Mr. Kepley, he filed it in plaintiff's file instead of sending it to plaintiff. Consequently, plaintiff had no way of knowing that a misunderstanding or mistake had been made.
On January 5, 2001 plaintiff was working on a job at Catawba College where the administration building was being rewired. As he was walking down the steps to the basement in order to get some equipment, plaintiff's foot slipped off a step, causing him to lurch forward. His left knee then struck a brick wall. Plaintiff immediately experienced severe pain in his knee and, when he reached down to check it, he could tell that he had broken his kneecap.
The general contractor took plaintiff from the work site to the hospital where he was seen by Dr. Jeffery A. Baker, an orthopedic surgeon. His condition was diagnosed as a severely displaced patella fracture. Dr. Baker performed surgery that night to repair the patella using screws.
When plaintiff returned to the doctor on January 11, 2001 after his discharge from the hospital, there was still a one millimeter gap of the fracture site. Consequently, Dr. Baker removed the brace and placed a cast on the leg. The cast was removed February 15, 2001 and plaintiff was instructed to work on his range of motion.
On March 13, 2001, the fracture appeared to be healing. However, approximately two weeks later, the screws pulled apart and the fracture separated. Plaintiff went to the emergency room where Dr. James L. Comadoll, another orthopedic surgeon, was consulted.
Dr. Comadoll performed surgery March 30, 2001 to again reduce and secure the fracture with hardware, including wires.
Following the second operation, plaintiff's kneecap healed. The fracture site was solid by August 22, 2001 but plaintiff was experiencing pain from the hardware still present in his knee. Consequently, Dr. Comadoll recommended that the hardware be removed.
Plaintiff then underwent a third operation on September 24, 2001 to have the hardware removed from his kneecap.
Although plaintiff missed work following his knee injury, he continued to receive his regular salary of $275.00 per week at all times up to the date of the hearing before Deputy Commissioner Chapman.
Shortly after the accident in question, plaintiff called defendant to notify the carrier of his injury. He sent a written notice of injury to defendant on January 8, 2001.
Beth Gregory, an adjuster for defendant, then called plaintiff to discuss the incident. In their conversation, Ms. Gregory advised plaintiff that the claim would be paid, and, in fact, defendant subsequently began paying for his medical treatment, including the expenses associated with the first operation.
However, in late April 2001 Harry Lippard, a premium auditor for defendant, went to plaintiff's office to go through company records in order to determine the actual payroll for the previous year and then to determine the proper premium. This was a routine practice since the premium was based upon actual payroll and job classifications during the year and since the original premium paid was based on estimates.
During the audit process, plaintiff told Mr. Lippard about his injury and that he had filed a claim with defendant. Upon subsequent review of the policy, Mr. Lippard saw that plaintiff himself was not covered under the policy.
Presumably based upon the auditor's report, defendant then denied further liability for benefits and issued a premium refund in the amount of $2,094.00 since the actual payroll was much less than the estimated payroll upon which the original premium was based.
Plaintiff called Mr. Kepley after receiving the letter of denial. Mr. Kepley indicated that as far as he could remember, he intended for plaintiff to be covered, but that he had sold the insurance agency and no longer had access to his records.
Plaintiff then contacted James Greene, the new owner of the insurance agency. It took some time before the records could be found, but Mr. Greene found the original insurance policy in the files, as well as the application for insurance which excluded plaintiff from coverage.
Although plaintiff specifically told Mr. Kepley, an authorized agent for defendant, that he wanted equivalent coverage to his prior policy with Harleysville, Mr. Kepley modified plaintiff's coverage so that he as the sole proprietor was not included.
The Deputy Commissioner found and the Full Commission hereby finds that Mr. Kepley's testimony that contradicted plaintiff's testimony was not believable. Aside from Mr. Kepley's demeanor at the hearing as noted by the Deputy Commissioner, Mr. Kepley's testimony was questionable because he did not have plaintiff sign the application or provide plaintiff with a copy of the application and because Mr. Kepley filed the policy without sending a copy to plaintiff. Although Mr. Kepley indicated that it was customary for agents to sign applications for their insured and to submit the applications to the insurance company without reviewing them with the insured, the practice appears to be ill advised from a legal standpoint, particularly when a major change of coverage is being made. Mr. Greene refuted Mr. Kepley's assertion that signing for an insured was a common practice among insurance agents and stated that the purpose of having the insured sign the application is to make sure the information contained in the application is correct.
Because plaintiff never saw the application or the policy that resulted therefrom, there was no way for plaintiff to know that an error had been made as to how Mr. Kepley handled the matter.
Although defendant was also unaware of the error and had provided a policy in accordance with the application submitted, it had constructive knowledge of plaintiff's request for personal coverage inasmuch as Mr. Kepley was an authorized agent for defendant and plaintiff had advised Mr. Kepley of the fact that he wanted himself included. Defendant has argued that plaintiff did not prove prior coverage of himself with Harleysville, but Mr. Kepley himself testified that he told plaintiff that plaintiff could save more money by excluding himself from coverage, which strongly implied that plaintiff previously had coverage.
Furthermore, the greater weight of the evidence shows that defendant accepted premiums based in part on plaintiff's salary and treated him as an employee until after the injury in question. Until the auditor came to plaintiff's office a year after the policy was bound, plaintiff had no reason to believe that he was not covered.
There is contradictory evidence in the record concerning the issue of whether plaintiff's salary was included in the estimated payroll calculations at the time the application was made. Mr. Lippard testified that he believed plaintiff's salary was not included in the estimated payroll and the refund could not be attributed to that part of the premium based on plaintiff's wages. Mr. Lippard stated that the reason for the premium refund was that plaintiff had two fewer employees due to a mill closing. However, plaintiff testified that when he discussed coverage with Mr. Kepley, plaintiff requested a reduction in the amount of payroll because he was losing employees at a cotton mill that was shutting down operations. The Full Commission finds that the greater weight of the credible evidence shows that plaintiff's salary was included in the computation of the premium for workers' compensation insurance coverage in the policy written by Mr. Kepley.
The Full Commission finds based upon the greater weight of the credible evidence that on January 5, 2001 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendants. Plaintiff's slip on the steps constituted an unusual occurrence which interrupted his regular work routine. As a result of the accident plaintiff sustained a fractured patella.
Although plaintiff was unable to work for periods of time after his injury, he sustained no loss of earnings due to the continued payment of his regular wages as of the date of the hearing before the Deputy Commissioner. Any issue as to whether defendant — employer may be entitled to reimbursement by defendant-carrier for wages paid, to the extent of workers' compensation benefits due plaintiff, is not before the Commission and therefore the Commission makes no findings on this issue.
The evidence of record does not address whether plaintiff reached maximum medical improvement with respect to the injury in question or whether he sustained any permanent partial disability to his leg. Consequently, no findings are made regarding those issues.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On January 5, 2001 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2, During the year preceding the injury in question, plaintiff was a sole proprietor who was actively engaged in the operation of the business. N.C. Gen. Stat. § 97-2(2).
3. Zurich Insurance Company, which insured plaintiff's business at all times in question, had constructive notice of plaintiff's election to be included in the workers' compensation policy for his company in that plaintiff notified Jay Kepley, an authorized agent of the insurance company, of his desire for personal coverage and Mr. Kepley's knowledge is imputed to the insurer. N.C. Gen. Stat. § 97-2(2); Doud v. K G Janitorial Service, 69 N.C. App. 205, 316 S.E.2d 664 (1984).
4. Furthermore, Zurich is estopped from asserting the statutory notice requirement to deny coverage of plaintiff in that defendant accepted premiums based in part upon plaintiff's salary after its agent was notified of plaintiff's election for personal coverage, in that its agent never showed the application for insurance to plaintiff or discussed it with him, in that the insurance policy was never provided to plaintiff after it was issued and in that the issue of coverage was not raised until after he was injured and medical compensation had been paid.Aldridge v. Motor Co., 262 N.C. 248, 636 S.E.2d 591 (1964); Doud v. K G Janitorial Service, supra.
5. Zurich Insurance Company is liable for benefits under the Workers' Compensation Act for the injury giving rise to this claim. N.C. Gen. Stat. § 97-2(2).
6. Having received his regular salary at all times following the injury, plaintiff is not entitled to compensation for temporary total disability. N.C. Gen. Stat. § 97-29.
7. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation against Zurich Insurance Company is ALLOWED.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident.
3. The issue of an award of any permanent partial disability compensation to plaintiff's leg is RESERVED for further determination.
4. Approval of an attorney's fee for plaintiff's counsel shall be made when compensation is awarded.
5. Defendants shall pay the costs.
This the ___ day of September, 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER