***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones, and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Jones with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. Plaintiff was employed by defendant Weyerhaeuser Company at its facility in Plymouth, North Carolina, from November 11, 1955, until September 1, 1995.
2. Defendant Weyerhaeuser Company was self insured during the time of plaintiff's employment with defendant.
3. It is stipulated that plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant Weyerhaeuser Company, and specifically, that plaintiff was exposed to asbestos for thirty (30) days within a seven (7) month period, as set forth in N.C. Gen. Stat. § 97-57.
4. It is stipulated that defendant manufactures paper and paper products such as paper for crafts, paper bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is of a mile long. The entire facility is built on approximately 350 acres and encompasses about twenty different buildings. The newest building was built in the 1960's and the vast majority of the insulation used in the original construction of the buildings was asbestos containing. Steam-producing boilers are used at the facility in Plymouth, North Carolina. In addition, there are hundreds of miles of steam pipes that were covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
5. It is stipulated that plaintiff's income for the fifty-two (52) weeks prior to his retirement was $52,478.42, which is sufficient to justify the maximum rate allowable under the North Carolina Workers' Compensation Act. It is further stipulated that plaintiff's date of diagnosis is August 31, 1999.
6. The parties are subject to the North Carolina Workers' Compensation Act, defendant Weyerhaeuser Company employing the requisite number of employees to be bound under the provisions of the Act.
7. The relevant medical records of plaintiff, including documentation from the following physicians, has been stipulated into evidence as Stipulated Exhibit 1:
a. Dr. DiMeo,
b. Dr. Curseen,
c. Dr. Kateria,
d. Dr. Dula,
e. Dr. Lucas,
f. Dr. Segerra,
g. Dr. Venizelos,
h. Dr. Chiles,
i. Dr. Grauel, and,
j. Dr. Powers.
8. The transcript of Joseph Wendlick's testimony at civil trial, the curriculum vitae of Joseph Wendlick and other documentation produced by defendant in discovery had been stipulated into evidence as Stipulated Exhibit 2.
9. The employment and income records of plaintiff had been stipulated into evidence as Stipulated Exhibit 3.
10. Defendant stipulates all the procedures used in Weyerhaeuser's asbestos medical surveillance program at its facility in Plymouth, North Carolina, were consistent with those outlined as part of the North Carolina Dusty Trades Program which defendant contends is contained in N.C.G.S. § 97-60 through N.C.G.S. § 97-61.7. Further, that these procedures were in place during plaintiff's employment at the Plymouth facility.
11. Defendant stipulates the medical monitoring procedures used in its asbestos medical surveillance program in all Weyerhaeuser plants in the State of North Carolina were the same.
12. Defendant stipulates the Weyerhaeuser facilities to which Mr. Joseph Wendlick referred to in his deposition transcript, which has been stipulated into evidence, include the facilities in North Carolina.
13. Plaintiff contends he is entitled to an award of a ten percent (10%) penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12. Defendant agrees that should the claim be found compensable, defendant shall pay an amount of five percent (5%) of all compensation exclusive of medical compensation.
14. Plaintiff contends the contested issues before the undersigned are:
 (a) What benefits, monetary and/or medical, is plaintiff entitled to receive, if any, at this time?
 (b) Is plaintiff entitled to the additional panel examination(s) as provided by in N.C.G.S. § 97-61.3 et seq. to determine what, if any, final compensation he may be due?
 (c) Whether plaintiff shall be entitled to attorney fees for the unreasonable defense of this matter?
15. Defendant contends the contested issues before the undersigned are:
 (a) What benefits, monetary and/or medical, is plaintiff entitled to receive, if any, at this time?
 (b) Does N.C.G.S. § 97-60 through N.C.G.S. § 97-61.7 apply to plaintiffs claim for benefits, and regardless, are these statutes in violation of the Constitutions of the United States and North Carolina?
 (c) Is plaintiff engaged in an occupation that has been found by the Industrial Commission to expose employees to the hazards of asbestosis under the provisions of N.C.G.S. § 97-60 through N.C.G.S. § 97-61.7?
 (d) At the time of the diagnosis, was plaintiff subject to removal from an occupation that exposed plaintiff to the hazards of asbestosis, as contemplated by N.C.G.S. § 97-60 through N.C.G.S. § 97-61.7?
16. On March 1, 2001, the parties submitted an additional Stipulation in which the parties agreed that plaintiff has asbestosis. Therefore, this is no longer a contested issue in this case.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was an employee of defendant at its Plymouth, North Carolina facility from November 11, 1955, until September 1, 1995.
2. Plaintiff was exposed to asbestos dust from a number of sources including asbestos pup packing, asbestos gaskets, asbestos brake pads, asbestos insulation, and pipe covering while working at defendant's facility in Plymouth, North Carolina. During the first six years of his employment, he worked in the extra board department where he worked directly with pipe coverers who were installing and removing asbestos insulation. His duties included cleaning up after the pipe coverers using a broom or air hose to sweep up the asbestos insulation and dust. During the rest of his employment, plaintiff worked in the storeroom where such asbestos-containing materials were stored. His job duties required him to unload trucks with asbestos-containing material, issue and deliver these materials to coworkers, cut asbestos pipe coverings to size, and work in the storeroom, which had asbestos covered pipes overhead.
3. Plaintiff was exposed to asbestos containing-materials on a regular basis for more than thirty (30) working days or parts thereof within seven (7) consecutive months from 1955 to 1995.
4. Albert Curseen, M.D., diagnosed plaintiff with asbestosis on August 31, 1999. Dr. Curseen's diagnosis was based upon plaintiff's extremely strong history of asbestos exposure and adequate latency period, his chest radiograph, clubbing of the fingernails, and history of dyspnea on exertion. This diagnosis was later confirmed by Yash Kateria, M.D., at Eastern Carolina University on February 4, 2000 who treated plaintiff for his history of shortness of breath.
5. Michael DiMeo, M.D., performed the advisory medical evaluation and determined that plaintiff was exposed to asbestos throughout the more than forty (40) years when he worked for Weyerhaeuser. Plaintiff suffers from dyspnea and has interstitial changes on chest x-rays that are consistent with asbestos exposure.
6. Fred Dula, M.D., interpreted a CT scan dated November 10, 1999, and determined there were pleural plaques and interstitial changes consistent with asbestosis.
7. Phillip Lucas, M.D., interpreted chest x-rays dated July 29, 1998, and August 28, 1999, and found bilateral interstitial fibrotic changes consistent with asbestosis.
8. Jay Segerra, M.D., interpreted a chest x-ray dated July 29, 1998, and found interstitial changes consistent with mild pulmonary asbestosis.
9. Paul Venizelos, M.D., interpreted a chest x-ray dated July 29, 1998, and found parenchymal changes consistent with pneumoconiosis of asbestosis.
10. Caroline Chiles, M.D., interpreted a chest x-ray dated July 29, 1998, and found parenchymal changes consistent with pneumoconiosis of asbestosis.
11. George Grauel, M.D., interpreted a chest x-ray dated August 28, 1999, and found parenchymal and pleural changes consistent with pneumoconiosis of asbestosis.
12. Barry Powers, M.D., interpreted a CT scan dated October 30, 1998, and found pleural thickening and mild interstitial lung disease consistent with asbestos exposure.
13. Plaintiff developed asbestosis, an occupational disease, as a result of his employment with defendant.
14. Plaintiff's employment with defendant placed him at an increased risk of developing asbestosis than members of the general public.
15. Plaintiff began having shortness of breath problems prior to quitting his job in 1995. Plaintiff sought medical treatment for his significant shortness of breath prior to quitting his job, but his doctor was unable to alleviate his symptoms. At work, his coworkers had to assist him with his job duties, including lifting heavy objects, which he could not do without losing his breath. He also became short of breath at work when climbing stairs. Plaintiff quit working on September 1, 1995, because he could no longer perform his job duties with his increasing shortness of breath.
16. Plaintiff's breathing has continued to decline since he has left the employment of defendant. He is unable to perform any physical work at all since leaving his employment and depends upon his family to take care of his home and yard. Plaintiff has no skills or training in areas other than physical work. Due to plaintiff's asbestosis, he is extremely limited in the activities he can perform.
17. Plaintiff's pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation and some treatment in the future as a result of his asbestosis and asbestos related pleural disease. Further, medical monitoring is reasonably necessary due to plaintiff's increased risk of developing lung and other asbestos-related cancers.
18. Defendant's Plymouth facility was found to have high levels of friable asbestos dust by their own Industrial Hygienist, Joseph Wendlick. As a result of Mr. Wendlick's findings, an asbestos medical monitoring program was initiated to comply with the dusty trade provisions of the N.C.G.S. § 97-60 through N.C.G.S. § 97-61.7.
19. Defendant, in lieu of participating in the North Carolina Dusty Trades Program as contained in N.C. Gen Stat. §§ 97-60 through 97-61.7, implemented its own asbestos medical surveillance program, which it asserts was consistent with the dusty trades statutory provisions. Defendant convinced the State of North Carolina that defendant need not be included in the state Dusty Trades Program since defendant's asbestos medical surveillance program served the same purpose. If defendant's medical surveillance program was in place during plaintiff's employment with defendant, then it is likely that plaintiff would have participated in the program by virtue of his employment with defendant.
20. Plaintiff may have relied upon defendant's representations to him and to his fellow employees that defendant's asbestos medical surveillance program would monitor his exposure to asbestos and would medically screen and monitor him for any signs of the development of asbestosis. In accordance with such program, plaintiff would have been seen by defendant's doctors on occasions throughout his employment with defendant, raising the possibility of discovery of plaintiff's asbestosis while he was still employed by defendant.
21. Plaintiff was likely not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant, that had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he would have been diagnosed with asbestosis while still in defendant's employ and thus subject to an order of removal and subsequent award. If plaintiff, to his detriment, relied upon the false representations of defendant in regard to its medical monitoring of plaintiff, then defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal. Additional evidence as to the elements of equitable estoppel would be required for the Commission to make a determination on the matter.
22. N.C. Gen. Stat. §§ 97-60 through 97-61.7 are constitutional.
 ***********
The foregoing findings of fact and conclusions of law engender the following additional
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. The provisions of N.C. Gen. Stat. § 97-60 et seq. are constitutional.
4. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks."
5. The North Carolina Supreme Court determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure. See Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001). However, the instant case may be distinguishable from Austin in that plaintiff was likely not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant. Had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he might have been diagnosed with asbestosis while still in defendant's employ and, thus, subject to an order of removal and subsequent award. Plaintiff may have, to his detriment, relied upon the representations of defendant in regard to its medical monitoring of plaintiff. Thus, defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal.
The doctrine of equitable estoppel is a means of preventing a party from asserting a defense that is inconsistent with its prior conduct.Purser v. Heatherlin Properties, 137 N.C. App. 332, 337, 527 S.E.2d 689,692 (2000), cert. denied, 352 N.C. 676, 545 S.E.2d 428 (2000) (citingGodley v. County of Pitt, 306 N.C. 357, 360, 293 S.E.2d 167, 169
(1982)). In particular, the rule is grounded in the premise that `it offends every principle of equity and morality to permit a party to enjoy the benefits of a transaction and at the same time deny its terms or qualifications.' Id. (quoting Thompson v. Soles, 299 N.C. 484, 487,263 S.E.2d 599, 602 (1980)). The law of estoppel applies in workers' compensation cases, and may be used to ensure coverage of a work-related injury. Id. (citing Carroll v. Daniels and Daniels Constr. Co., Inc.,327 N.C. 616, 620, 398 S.E.2d 325, 328 (1990).
Defendant's argument to the effect that estoppel was raised too late in this case is to no avail. In Purser v. Heatherlin Properties, supra, the doctrine was raised for the first time by the Court of Appeals itself exmeru moto.
In Belfield v. Weyerhaeuser Co., 77 N.C. App. 332, 335 S.E.2d 44
(1985), the North Carolina Court of Appeals held that equitable estoppel was appropriate to prevent an employer from raising a time limitation when the employer misrepresented to the employee that his rights under the Workers' Compensation Act were being exercised on his behalf by the employer. See Id. at 337, 47. The court stated:
 The commonest type of case is that in which a claimant, typically not highly educated, contends that he was lulled into a sense of security by statements of employer or carrier representatives that `he will be taken care of' or that his claim has been filed for him or that a claim will not be necessary because he would be paid compensation benefits in any event. When such facts are established by the evidence, the lateness of the claim has ordinarily been excused.
Id. (quoting 3 A. Larson, The Law of Workmen's Compensation, Section 78.45 at 15-302 through 15-305 (1983)). In the case before the Commission, defendant similarly seeks to argue that the 104 week award pursuant to an order of removal is not timely because plaintiff was not diagnosed until after he retired. However, this Commission will not permit defendant to use a time limitation defense if there is evidence suggesting that defendant's own medical surveillance program failed to detect plaintiff's development of asbestosis while he was still in defendant's employ, or failed to disclose to plaintiff that he had developed asbestosis when defendant had knowledge thereof. Such acts may inequitably prevent plaintiff from receiving an order of removal and subsequent award that he otherwise deserved. For these reasons, defendant may be equitably estopped from arguing as to the timeliness of plaintiff's order or removal and subsequent award. Evidence as to the elements of estoppel is required before the Commission can make a determination on the matter. Therefore, this issue must be held in abeyance pending the presentation of such evidence.
6. Plaintiff is entitled to payment of all medical expenses incurred or to be incurred as a result of his asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen his disability. N.C. Gen. Stat. § 97-25; N.C. Gen. Stat. § 97-59.
7. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1 etseq. and is further entitled to any additional benefits due to plaintiff which shall be determined after additional examinations and hearings.
8. Plaintiff's claim for attorney's fees from defendant on the ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
9. This claim must be remanded to a deputy commissioner for further hearing on the issue of estoppel, and for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation in addition to medical and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen her disability.
2. Plaintiff shall undergo additional examinations as provided by law.
3. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
4. The Commission additionally retains jurisdiction in this matter to address the issue of equitable estoppel, as raised by plaintiff, as a means of awarding to plaintiff the 104 week award pursuant to N.C. Gen. Stat. § 97-61.5.
5. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation under the Act beyond the medical compensation awarded herein and any other issues in controversy including equitable estoppel are hereby held in abeyance pending the outcome of further hearings.
This 27th day of March 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER