***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. Plaintiff was employed by defendant Weyerhaeuser Company at its facility in Plymouth, North Carolina, from 28 April 1972 until 30 April 1992.
2. Defendant Weyerhaeuser Company was self-insured during the time of plaintiff's employment with defendant.
3. It is stipulated that plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant Weyerhaeuser Company, and specifically, that plaintiff was exposed to asbestos for 30 days within a seven month period, as required by N.C. Gen. Stat. §97-57.
4. It is stipulated that defendant manufactures paper and paper products such as paper for crafts, paper bags, boxes and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960's and the vast majority of the insulation used in the original construction of the buildings was asbestos containing. There are steam-producing boilers used at the facility in Plymouth, North Carolina. In addition, there are hundreds of miles of steam pipes that were covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
5. It is stipulated that plaintiff's income for 52 weeks prior to her retirement was $37,240.48.
6. The parties are subject to the North Carolina Workers' Compensation Act, defendant Weyerhaeuser Company employing the requisite number of employees to be bound under the provisions of said act.
7. Should N.C. Gen. Stat. §§ 97-60 through 97-61.7 be declared unconstitutional, plaintiff reserves the right to offer additional testimony on the issues of loss of wage earning capacity and/or disability. Defendant objects thereto.
8. The relevant medical records of plaintiff including documentation from Dr. Anderson, Dr. Curseen, Dr. Grauel, Dr. Dula, Dr. Rao, Dr. Lucas and Dr. Wu have been stipulated into evidence and were stipulated into evidence as Stipulated Exhibit 1.
9. The transcript of Joseph Wendlick's testimony at civil trial, the curriculum vitae of Joseph Wendlick and other documentation produced by defendant in discovery have been stipulated into evidence as Stipulated Exhibit 2.
10. The employment and income records of plaintiff have been stipulated into evidence as Stipulated Exhibit 3.
11. Defendant stipulates all the procedures used in Weyerhaeuser's asbestos medical surveillance program at its facility in Plymouth, North Carolina, were consistent with those outlined as part of the North Carolina Dusty Trades Program which defendant contends is contained in N.C. Gen. Stat. §§ 97-60 through 97-61.7. Further, that these procedures were in place during plaintiff's employment at the Plymouth facility.
12. Defendant stipulates the medical monitoring procedures used in its asbestos medical surveillance program in all Weyerhaeuser plants in the State of North Carolina were the same.
13. Defendant stipulates that the Weyerhaeuser facilities to which Mr. Joseph Wendlick referred to in his deposition transcript which has been stipulated into evidence included the facilities in North Carolina.
14. Should plaintiff's claim be found compensable, the deputy commissioner may include in his Opinion and Award the following language:
 The parties have resolved plaintiff's claim for an award of a 10% penalty pursuant to G.S. § 97-12 on a compromise basis. Pursuant to the agreement of the parties, defendant shall pay to plaintiff, in addition to the compensation awarded herein, an additional 5% of all such compensation, with the exception of medical compensation pursuant to G.S. § 97-25. As to compensation ordered paid to plaintiff in a lump sum, defendant shall pay an additional 5% of any such lump sum. As to any weekly compensation awarded plaintiff, defendant shall increase the amount of such weekly compensation by 5%. Defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
15. On 24 April 2001, defendant stipulated that plaintiff does suffer from asbestosis on the record during the beginning of the deposition of Dr. Dula rendering is testimony unnecessary. Defendant agreed to stipulate that plaintiff has asbestosis after reviewing the deposition transcript of the Advisory Medical panel Physician, Dr. Linda Anderson. Therefore, this is no longer a contested issue in this case.
 *********** EVIDENTIARY RULINGS
The objections raised in the depositions of Linda C. Anderson, M.D., Albert F. Curseen, M.D., Phillip H. Lucas, M.D., and John Wen-Wei Wu, M.D., are OVERRULED.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. This matter came on for hearing before the Commission after plaintiff's first examination and medical reports establishing that he has asbestosis. Plaintiff retired from employment with defendant on 30 April 1992, prior to the date of her diagnosis of asbestosis on 1 September 1999.
2. Plaintiff has contracted asbestosis and asbestosis-related pleural disease as a result of her injurious exposure to the hazards of asbestos while employed by defendant, Weyerhaeuser Company.
3. Based upon the stipulated description of plaintiff's job duties while employed by defendant and other evidence submitted, the Full Commission finds as fact that plaintiff was exposed to asbestos containing materials on a regular basis for more than 30 working days or parts thereof inside of seven consecutive months from 1 January 1946 to 30 December 1951 and from 28 April 1972 until 30 April 1992.
4. Plaintiff was an employee of defendant at its Plymouth, North Carolina facility from 28 April 1972 until 30 April 1992.
5. Plaintiff was exposed to asbestos dust from a variety of sources at defendant's facility in Plymouth, North Carolina. As a utility worker, plaintiff cleaned up the plywood department and would use an air hose to blow down asbestos containing dryers and asbestos insulated stem pipes. She cleaned up after the millwrights with brooms, shovels and air hoses. The millwrights worked on the pipes and left behind asbestos containing debris/insulation from the steam pipes on the floor. She also worked under steam lines in the hydropump area that were insulated with asbestos that appeared to be deteriorated and damaged. Plaintiff was also exposed to the asbestos containing brake pads on the paper cutter machines. She did not wear a respirator for protection against her asbestos exposure.
6. Plaintiff was exposed to asbestos containing materials on a regular basis for more than 30 working days or parts thereof inside of seven consecutive months from 1972 to 1992.
7. Albert Curseen, M.D., diagnosed plaintiff with asbestosis on 1 September 1999. Dr. Curseen's diagnosis was based upon plaintiff's history of asbestos exposure and adequate latency period, her chest radiograph, clubbing of the fingernails, and history of dyspnea on exertion. Dr. Curseen confirmed his diagnosis of asbestosis during his live deposition on 6 March 2000.
8. Linda Anderson, M.D., performed the advisory medical evaluation and determined plaintiff has probable asbestosis given her chest x-ray and high resolution CT changes with very mild reduction in pulmonary function on PFTs and history of exposure compatible with asbestosis. During Dr. Anderson's live deposition on 30 March 2001, she concluded plaintiff suffers from asbestosis with a Class II level AMA respiratory impairment based on plaintiff's symptoms, her PFT findings and her chest x-ray findings. Dr. Anderson recommended yearly chest x-ray surveillance and yearly pulmonary function studies to medically monitor plaintiff's condition.
9. Phillip Lucas, M.D., interpreted plaintiff's chest x-rays dated 28 August 1999, and determined that plaintiff had bilateral interstitial fibrotic changes consistent with asbestosis in a patient who has had an adequate exposure history and latency period. Dr. Lucas confirmed these findings in his live deposition on 10 April 2001.
7. John Wu, M.D., interpreted plaintiff's chest CT scan dated 17 April 2000 and determined there was mild diffuse thickening of the interstitial septations present on the CT scan. During his live deposition of 21 February 2001, Dr. Wu testified that these radiographic findings are consistent with asbestosis given an appropriate exposure history and latency period.
8. Fred Dula, M.D., interpreted plaintiff's CT scan and chest x-ray dated 17 April 2000 and a chest x-ray dated 15 November 1998 and determined there were interstitial changes in the mod and lower lung zones consistent with asbestosis.
9. L. C. Rio, M.D., interpreted plaintiff's chest x-ray dated 28 August 1999 and found irregular and round opacities present in the lower and middle lung zone bilaterally present on the radiograph. He concluded that in the presence of a significant exposure history to asbestos dust, these findings are consistent with diagnosis of bilateral interstitial fibrosis due to asbestosis.
10. George Gruel, M.D., interpreted plaintiff's chest x-ray dated 28 August 1999 and identified within the mid and lower lung zones a find to medium irregular opacity pattern which may be associated with an underlying pneumoconiosis such as asbestosis.
11. Defendant stipulated that plaintiff has developed asbestosis.
12. Plaintiff suffers from asbestos related pleural disease and asbestosis as a result of the many years of exposure to the hazards of asbestos while employed by defendant. Plaintiff's pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation and some treatment in the future as a result of her asbestosis and asbestos related pleural disease. Further, medical monitoring is reasonably necessary due to her increased risk of developing lung and other asbestos related cancers.
13. Defendant's Plymouth facility was found to have high levels of friable asbestos dust by their own Industrial Hygienist, Joseph Wendlick. As a result of Mr. Wendlick's findings, an asbestos medical monitoring program was initiated to comply with the dusty trade provisions of the N.C. Gen. Stat. §§ 97-60 through 97-61.7.
14. Defendant, in lieu of participating in the North Carolina Dusty Trades Program as contained in N.C. Gen Stat. §§ 97-60 through 97-61.7, implemented its own asbestos medical surveillance program, which it asserts was consistent with the dusty trades statutory provisions. Defendant convinced the State of North Carolina that defendant need not be included in the state Dusty Trades Program since defendant's asbestos medical surveillance program served the same purpose. If defendant's medical surveillance program was in place during plaintiff's employment with defendant, then it is likely that plaintiff would have participated in the program by virtue of her employment with defendant.
15. At hearing before the Full Commission, counsel for plaintiff represented that plaintiff relied upon defendant's representations to her and her fellow employees that defendant's asbestos medical surveillance program would monitor her exposure to asbestos and would medically screen and monitor her for any signs of the development of asbestosis. In accordance with such program, plaintiff would have been seen by defendant's doctors on occasions throughout her employment with defendant, raising the possibility of discovery of plaintiff's asbestosis while she was still employed by defendant.
16. Plaintiff asserts that she was not aware of her development of asbestosis until after she retired because defendant's medical surveillance program did not effectively monitor and track her development of asbestosis during her employment with defendant, that had defendant's program provided proper medical screening to inform plaintiff of her development of asbestosis, she would have been diagnosed with asbestosis while still in defendant's employ and thus subject to an order of removal and subsequent award. If plaintiff, to her detriment, relied upon the false representations of defendant in regard to its medical monitoring of plaintiff, then defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal. Additional evidence as to the elements of equitable estoppel would be required for the Commission to make a determination on the matter.
17. The provisions of N.C. Gen. Stat. § 97-60 et seq. are not unconstitutional.
18. Plaintiff seeks attorney's fees from defendant in this case on the grounds that defendant defended this claim without reasonable ground. This issue should be reserved for subsequent determination at the final hearing in this matter.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission hereby makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, for as much as 30 working days or parts thereof, within seven consecutive months, which exposure proximately augmented her asbestosis. N.C. Gen. Stat. § 97-57.
2. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease while employed by defendant. N.C. Gen. Stat. §§ 97-53(24); 97-62.
3. The provisions of N.C. Gen. Stat. § 97-60 et seq. are constitutional.
4. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks."
5. The North Carolina Supreme Court determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure. See Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001). However, the instant case may be distinguishable from Austin in that plaintiff has asserted that she was not aware of her development of asbestosis until after she retired because defendant's medical surveillance program did not effectively monitor and track her development of asbestosis during her employment with defendant. Had defendant's program provided proper medical screening to inform plaintiff of her development of asbestosis, she might have been diagnosed with asbestosis while still in defendant's employ and, thus, subject to an order of removal and subsequent award. Plaintiff may have, to her detriment, relied upon the representations of defendant in regard to its medical monitoring of plaintiff. Thus, defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal.
The doctrine of equitable estoppel is a means of preventing a party from asserting a defense that is inconsistent with its prior conduct.Purser v. Heatherlin Properties, 137 N.C. App. 332, 337, 527 S.E.2d 689,692 (2000), cert. denied, 352 N.C. 676, 545 S.E.2d 428 (2000) (citingGodley v. County of Pitt, 306 N.C. 357, 360, 293 S.E.2d 167, 169
(1982)). In particular, the rule is grounded in the premise that `it offends every principle of equity and morality to permit a party to enjoy the benefits of a transaction and at the same time deny its terms or qualifications.' Id. (quoting Thompson v. Soles, 299 N.C. 484, 487,263 S.E.2d 599, 602 (1980)). The law of estoppel applies in workers' compensation cases, and may be used to ensure coverage of a work-related injury. Id. (citing Carroll v. Daniels and Daniels Constr. Co., Inc.,327 N.C. 616, 620, 398 S.E.2d 325, 328 (1990).
Defendant's argument to the effect that estoppel was raised too late in this case is to no avail. In Purser v. Heatherlin Properties, supra, the doctrine was raised for the first time by the Court of Appeals itself exmeru moto.
In Belfield v. Weyerhaeuser Co., 77 N.C. App. 332, 335 S.E.2d 44
(1985), the North Carolina Court of Appeals held that equitable estoppel was appropriate to prevent an employer from raising a time limitation when the employer misrepresented to the employee that his rights under the Workers' Compensation Act were being exercised on his behalf by the employer. See Id. at 337, 47. The court stated:
 The commonest type of case is that in which a claimant, typically not highly educated, contends that he was lulled into a sense of security by statements of employer or carrier representatives that `he will be taken care of' or that his claim has been filed for him or that a claim will not be necessary because he would be paid compensation benefits in any event. When such facts are established by the evidence, the lateness of the claim has ordinarily been excused.
Id. (quoting 3 A. Larson, The Law of Workmen's Compensation, Section 78.45 at 15-302 through 15-305 (1983)). In the case before the Commission, defendant similarly seeks to argue that the 104 week award pursuant to an order of removal is not timely because plaintiff was not diagnosed until after he retired. However, this Commission will not permit defendant to use a time limitation defense if there is evidence suggesting that defendant's own medical surveillance program failed to detect plaintiff's development of asbestosis while she was still in defendant's employ, or failed to disclose to plaintiff that she had developed asbestosis when defendant had knowledge thereof. Such acts may inequitably prevent plaintiff from receiving an order of removal and subsequent award that she otherwise deserved. For these reasons, defendant may be equitably estopped from arguing as to the timeliness of plaintiff's order or removal and subsequent award. Evidence as to the elements of estoppel is required before the Commission can make a determination on the matter. Therefore, this issue must be held in abeyance pending the presentation of such evidence.
6. Plaintiff is entitled to payment of all medical expenses incurred or to be incurred as a result of her asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen her disability. N.C. Gen. Stat. § 97-25; N.C. Gen. Stat. § 97-59.
7. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. § 97-61.1 etseq. and is further entitled to any additional benefits due to plaintiff which shall be determined after additional examinations and hearings.
8. Plaintiff's claim for attorney's fees from defendant on the ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
9. This claim must be remanded to a deputy commissioner for further hearing on the issue of estoppel, and for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation in addition to medical and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen her disability.
2. Plaintiff shall undergo additional examinations as provided by law.
3. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
4. The Commission additionally retains jurisdiction in this matter to address the issue of equitable estoppel, as raised by plaintiff, as a means of awarding to plaintiff the 104 week award pursuant to N.C. Gen. Stat. § 97-61.5.
5. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation under the Act beyond the medical compensation awarded herein and any other issues in controversy including equitable estoppel, are hereby held in abeyance pending the outcome of further hearings.
This the ___ day of February, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER