***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant. Plaintiff was employed by defendant at its Plymouth facility from 30 March 1966 through 31 March 1986.
3. Defendant was duly self insured.
4. Plaintiff's income for 52 weeks prior to his retirement was $39,600.00 which is sufficient to justify a compensation rate of $507.67 under the North Carolina Workers' Compensation Act.
5. Plaintiff contends that he is entitled to an award of ten (10%) percent penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12. Defendant agrees that should this claim be found compensable, defendant will pay five (5%) percent of all compensation exclusive of medical compensation as a penalty pursuant thereto.
6. Should this case be determined to be compensable, language may be included to remove plaintiff employee from further exposure pursuant to N.C. Gen. Stat. § 97-62-5(b).
7. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
8. Should N.C. Gen. Stat. §§ 97-60 through 97-6.1 be determined to be unconstitutional, additional testimony could be offered by the parties on the issues of wage loss earning capacity and/or disability.
9. The parties submitted for consideration by the undersigned the medical records and reports of plaintiff-employee by the following physicians:
1. Dr. Robert Rostand
2. Dr. Dennis Darcey
3. Dr. Albert Curseen
4. Dr. Fred Dula
5. Dr. George Grauel
6. Dr. Richard Bernstein
7. Dr. Fred Dula
8. Dr. Allen Hayes
10. Subsequent to the hearing before the Deputy Commissioner, the transcripts from the depositions of the following medical experts were submitted by counsel for the parties:
1. Dr. Fred Dula
2. Dr. Richard Bernstein
3. Dr. Allen Hayes
 *********** EVIDENTIARY RULINGS
The objections raised in the depositions of William C. Bernstein, M.D., Fred M. Dula, M.D., and D. Allen Hayes, M.D., are OVERRULED.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. This matter came on for hearing before the Commission after plaintiff's first examination and medical reports establishing that he has asbestosis. Plaintiff retired from employment with defendant on 31 March 1986, prior to the date of his diagnosis of asbestosis on 10 December 1997.
2. Plaintiff has contracted asbestosis and asbestosis-related pleural disease as a result of his injurious exposure to the hazards of asbestos while employed by defendant, Weyerhaeuser Company from 30 March 1966 to 31 March 1986.
3. Plaintiff was employed by defendant at its Plymouth facility from 30 March 1966 through his retirement on 31 March 1986.
4. Based upon the description of plaintiff's job duties while employed by defendant and other evidence submitted, the Full Commission finds as fact that plaintiff was exposed to asbestos containing materials on a regular basis for more than 30 working days or parts thereof inside of seven consecutive months from 30 March 1966 through 31 March 1986.
5. Defendant is engaged in the manufacture of paper and paper products such as paper for crafts, paper bags, boxes and pulp for baby diapers. Defendant's facility is built on approximately 350 acres and encompasses 20 different buildings. The newest of the buildings was built in the 1960s. There are two different types of boilers used at the facility in Plymouth, North Carolina. The first type of boiler is used to process the wood pulp. The second type of boiler is used to produce energy and heat. There are hundreds of miles of steam pipes covered with asbestos insulation throughout the facility.
6. Plaintiff has held several different positions during his 20 years of employment with defendant. During the first eight years of his employment, plaintiff worked as a pipe fitter. In this job, plaintiff had to remove asbestos insulation from around pipes and valves and pumps. During the last 12 years of his employment with defendant, plaintiff was a foreman supervising pipe fitters, millwrights and welders. As foreman, plaintiff had exposure to asbestos as a bystander when asbestos insulation materials were removed or installed. Throughout his employment, plaintiff was exposed to asbestos at various places throughout the plant. Plaintiff was not provided with a respirator to protect him from exposure to asbestos.
7. Dr. Robert A. Rostand, the Advisory Medical Panel Physician, examined plaintiff on 18 December 1998. Plaintiff gave Dr. Rostand a history of occupational exposure to asbestos consistent with that enumerated above. Dr. Rostand performed a pulmonary function test on plaintiff and concluded that plaintiff suffers from asbestos related disease of the lung and pleura. Dr. Rostand is of the opinion that plaintiff's exposure to asbestos while employed by defendant is the likely cause of the changes noted on the x-ray and resolution CT scan. Dr. Rostand also opined that plaintiff is at a high risk for development of lung cancer and mesothelioma as a result of his exposure of asbestos with defendant. Dr. Rostand recommended plaintiff have a periodic medical evaluation to determine if there is any progression of his asbestos related disease including pulmonary function testing, x-ray as well as a CT scan.
8. Dr. Dennis Darcey of the Division of Occupational 
Environmental Medicine of Duke University, examined plaintiff on 10 December 1997. Plaintiff's pulmonary function testing revealed a Class 2 respiratory impairment based upon AMA guidelines. Based on the employment history provided by plaintiff, Dr. Darcey noted that plaintiff has a history of significant exposure to asbestos and adequate latency to develop asbestosis. Dr. Darcey recommended periodic monitoring for the progression of asbestos related disease including pulmonary function, x-ray and for plaintiff to avoid further exposure to asbestos dust. Dr. Darcey also concluded that plaintiff is at an increased risk of developing lung cancer and mesothelioma as a result of his asbestos exposure and specifically recommended that the plaintiff-employee should avoid further exposure to asbestos dust.
9. Dr. Albert Curseen, a pulmonologist at Lake Norman Center for Breathing Disorders, examined plaintiff on 30 August 1999. Dr. Curseen was of the opinion that plaintiff suffers from asbestosis. Dr. Curseen recommended annual radiographs to screen against the increased risk for pulmonary malignancies due to his asbestos exposure.
10. Dr. Fred. M. Dula, a radiologist and B-reader, reviewed a CT scan and chest x-rays taken on 10 October 1997. Dr. Dula found "interstitial abnormalities consisting of short, thickened interlobar lines extending to the pleural surfaces in the non-dependent portions of the lung bases." He further noted the presence of bilateral pleural thickening. Dr. Dula opined that plaintiff's interstitial changes were consist with asbestosis and he indicated the radiological findings were consistent with asbestosis and asbestos related pleural disease.
11. Dr. George L. Grauel, a B-reader, examined plaintiff's x-rays taken on 30 August 1999 and found a medium irregular opacity pattern within the lower lung zones, which he associated with an underlying pneumoconiosis. He found no pleural abnormalities and offered no other conclusions.
12. Dr. Richard C. Bernstein of Pulmonary Critical Care Medicine, a NIOSH B-reader, evaluated the 30 August 1999 chest x-ray. Dr. Bernstein indicated the parenchymal abnormalities present were consistent with pneumoconiosis and concluded that the results of plaintiff's chest x-ray were consistent with asbestosis which is a fibrosis of the lungs caused by the inhalation of asbestos fibers.
13. Dr. Allen Hayes reviewed plaintiff's chest x-rays of 10 October 1997 and 30 August 1999 and a CT scan dated 10 October 1997. Dr. Hayes indicated that the data does not support a diagnosis of asbestosis. Dr. Hayes' opinion is contrary to the opinions of the majority of the physicians discussed above and is given less weight.
14. Plaintiff suffers from asbestos related pleural disease and asbestosis as a result of the many years of exposure to the hazards of asbestos while employed by defendant. Plaintiff's pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation and some treatment in the future as a result of his asbestosis and asbestos related pleural disease. Further, medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos related cancers.
15. Defendant, in lieu of participating in the North Carolina Dusty Trades Program as contained in N.C. Gen Stat. §§ 97-60 through 97-61.7, implemented its own asbestos medical surveillance program, which it asserts was consistent with the dusty trades statutory provisions. Defendant convinced the State of North Carolina that defendant need not be included in the state Dusty Trades Program since defendant's asbestos medical surveillance program served the same purpose. If defendant's medical surveillance program was in place during plaintiff's employment with defendant, then it is likely that plaintiff would have participated in the program by virtue of his employment with defendant.
16. At hearing before the Full Commission, counsel for plaintiff represented that plaintiff relied upon defendant's representations to him and his fellow employees that defendant's asbestos medical surveillance program would monitor his exposure to asbestos and would medically screen and monitor him for any signs of the development of asbestosis. In accordance with such program, plaintiff would have been seen by defendant's doctors on occasions throughout his employment with defendant, raising the possibility of discovery of plaintiff's asbestosis while he was still employed by defendant.
17. Plaintiff asserts that he was not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant, that had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he would have been diagnosed with asbestosis while still in defendant's employ and thus subject to an order of removal and subsequent award. If plaintiff, to his detriment, relied upon the false representations of defendant in regard to its medical monitoring of plaintiff, then defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal. Additional evidence as to the elements of equitable estoppel would be required for the Commission to make a determination on the matter.
18. Plaintiff's average weekly wage for the year in which he retired was sufficient to entitle plaintiff to a workers' compensation rate of $294.00, the maximum compensation rate under the North Carolina Workers' Compensation Act for 1986, the year in which plaintiff retired.
19. The provisions of N.C. Gen. Stat. § 97-60 et seq. are not unconstitutional.
20. Plaintiff seeks attorney's fees from defendant in this case on the grounds that defendant defended this claim without reasonable ground. This issue should be reserved for subsequent determination at the final hearing in this matter.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission hereby makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff was continuously was exposed to the hazards of asbestos dust while employed by defendant, for as much as 30 working days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. Plaintiff's injurious exposure to asbestos covered the entire period of his employment from 30 March 1966 through 31 March 1986. N.C. Gen. Stat. § 97-57.
2. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease as a result of his employment duties with defendant. N.C. Gen. Stat. §§ 97-53(24); 97-62.
3. The provisions of N.C. Gen. Stat. § 97-60 et seq. are constitutional.
4. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks."
5. The North Carolina Supreme Court determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure. See Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001). However, the instant case may be distinguishable from Austin in that plaintiff has asserted that he was not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant. Had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he might have been diagnosed with asbestosis while still in defendant's employ and, thus, subject to an order of removal and subsequent award. Plaintiff may have, to his detriment, relied upon the representations of defendant in regard to its medical monitoring of plaintiff. Thus, defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal.
The doctrine of equitable estoppel is a means of preventing a party from asserting a defense that is inconsistent with its prior conduct.Purser v. Heatherlin Properties, 137 N.C. App. 332, 337, 527 S.E.2d 689,692 (2000), cert. denied, 352 N.C. 676, 545 S.E.2d 428 (2000) (citingGodley v. County of Pitt, 306 N.C. 357, 360, 293 S.E.2d 167, 169
(1982)). In particular, the rule is grounded in the premise that `it offends every principle of equity and morality to permit a party to enjoy the benefits of a transaction and at the same time deny its terms or qualifications.' Id. (quoting Thompson v. Soles, 299 N.C. 484, 487,263 S.E.2d 599, 602 (1980)). The law of estoppel applies in workers' compensation cases, and may be used to ensure coverage of a work-related injury. Id. (citing Carroll v. Daniels and Daniels Constr. Co., Inc.,327 N.C. 616, 620, 398 S.E.2d 325, 328 (1990).
Defendant's argument to the effect that estoppel was raised too late in this case is to no avail. In Purser v. Heatherlin Properties, supra, the doctrine was raised for the first time by the Court of Appeals itself exmeru moto.
In Belfield v. Weyerhaeuser Co., 77 N.C. App. 332, 335 S.E.2d 44
(1985), the North Carolina Court of Appeals held that equitable estoppel was appropriate to prevent an employer from raising a time limitation when the employer misrepresented to the employee that his rights under the Workers' Compensation Act were being exercised on his behalf by the employer. See Id. at 337, 47. The court stated:
 The commonest type of case is that in which a claimant, typically not highly educated, contends that he was lulled into a sense of security by statements of employer or carrier representatives that `he will be taken care of' or that his claim has been filed for him or that a claim will not be necessary because he would be paid compensation benefits in any event. When such facts are established by the evidence, the lateness of the claim has ordinarily been excused.
Id. (quoting 3 A. Larson, The Law of Workmen's Compensation, Section 78.45 at 15-302 through 15-305 (1983)). In the case before the Commission, defendant similarly seeks to argue that the 104 week award pursuant to an order of removal is not timely because plaintiff was not diagnosed until after he retired. However, this Commission will not permit defendant to use a time limitation defense if there is evidence suggesting that defendant's own medical surveillance program failed to detect plaintiff's development of asbestosis while he was still in defendant's employ, or failed to disclose to plaintiff that he had developed asbestosis when defendant had knowledge thereof. Such acts may inequitably prevent plaintiff from receiving an order of removal and subsequent award that he otherwise deserved. For these reasons, defendant may be equitably estopped from arguing as to the timeliness of plaintiff's order or removal and subsequent award. Evidence as to the elements of estoppel is required before the Commission can make a determination on the matter. Therefore, this issue must be held in abeyance pending the presentation of such evidence.
6. Plaintiff is entitled to payment of all medical expenses incurred or to be incurred as a result of his asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen his disability. N.C. Gen. Stat. §§ 97-25; 97-59.
7. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. § 97-61.1 etseq. and is further entitled to any additional benefits due him which shall be determined after additional examinations and hearing if necessary.
8. Plaintiff's claim for attorney's fees from defendant on the ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
9. This claim must be remanded to a deputy commissioner for further hearing on the issue of estoppel, and for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation in addition to medical and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen her disability.
2. Plaintiff shall undergo additional examinations as provided by law.
3. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
4. The Commission additionally retains jurisdiction in this matter to address the issue of equitable estoppel, as raised by plaintiff, as a means of awarding to plaintiff the 104 week award pursuant to N.C. Gen. Stat. § 97-61.5.
5. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation under the Act beyond the medical compensation awarded herein and any other issues in controversy including equitable estoppel, are hereby held in abeyance pending the outcome of further hearings.
This the ___ day of February, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER